***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On the date of the alleged injury the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant employer at the time of the alleged injury.
3. Builders Mutual Insurance Company is the insurance carrier for the employer, David James Company.
4. Plaintiff alleges that he sustained an injury by accident arising out of the course and scope of his employment on September 20, 2002.
5. Defendant has denied this claim.
6. The parties stipulate to an average weekly wage of $515.73 and a compensation rate of $343.84.
In addition, the parties stipulated into evidence the following:
1. Packet of Industrial Commission Forms.
2. Packet of medical records and reports submitted October 19, 2004.
3. Additional medical reports submitted November 1, 2004.
4. Form 19 submitted January 3, 2005.
The Pre-Trial Agreement dated September 10, 2004, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the undersigned makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is forty-one years old, began working for defendant-employer in January 2002 as a carpenter. The company performed residential construction work. Plaintiff was a good carpenter and concentrated his skills on interior trim work, but he also performed other carpentry work as needed.
2. Prior to his employment with defendant-employer, plaintiff had a history of chronic back problems beginning with a motor vehicle accident which had occurred five or six years previously. He had had subsequent injuries and exacerbations of pain which required medical treatment, but he had not undergone surgery. While working for defendant-employer, he had complained of back problems. However, his supervisor had found it to be common for carpenters to have aches and pains because the job was hard on the body.
3. Plaintiff has alleged that on September 20, 2002 he spent an hour or two using a router on the porch of a house being built by his employer, that he worked on his knees during that time, that when he then tried to stand up while holding the router he felt a small pop in his back but that he continued working the remainder of the day. He did not mention that he was having a problem until the end of the workday when it was time to put his tools into his truck. At that time, he asked two coworkers for assistance because he was unable to lift the tools.
4. On Saturday September 21, 2002 plaintiff went to the emergency room where he complained of low back pain and was noted to report having had a recent injury at home while bending. He was treated with medication and advised to follow up with an orthopedic surgeon. Plaintiff subsequently returned to the emergency room on Monday September 23, 2002 with severe back pain radiating to his leg. The emergency room physician gave him a note to be out of work and again referred him to an orthopedic surgeon. Plaintiff then called his supervisor, Tim Sullivan, and told Mr. Sullivan that he had a doctor's work excuse note. Mr. Sullivan was understanding and did not have to see the note because plaintiff was a good employee. During that conversation and during many subsequent ones, plaintiff never advised Mr. Sullivan that he had been hurt at work. He did describe past injuries and problems, however.
5. On September 26, 2002 plaintiff went to Coastal Orthopedics and saw Stephen Free, a physician's assistant. He reported that he had been having back pain for approximately two weeks, that he had had prior back problems with two episodes during the previous three years and that he was experiencing pain from his low back to his right buttocks and down his right leg to his knee. Mr. Free prescribed a steroid dose pack and other medications, and ordered an MRI. Plaintiff subsequently saw Dr. Rodger on October 3, 2002. At that appointment, he was asked if his condition was due to a work injury and he said that it was not. Dr. Rodger reviewed the MRI, which revealed degenerative disc disease and central disc herniations at L4-5 and L5-S1. Since there did not appear to be significant nerve compression, Dr. Rodger concluded that plaintiff was not a good surgical candidate, so he referred plaintiff to a back institute for epidural steroid injections, therapy and other non-surgical treatment.
6. Plaintiff then saw Dr. Wall on October 15, 2002 and, for the first time, described having lifted a router at work. Dr. Wall treated him conservatively but he remained symptomatic, so Dr. Wall subsequently referred him to Dr. Huffmon, a neurosurgeon. Dr. Huffmon examined him on January 24, 2003 and reviewed the MRI. The findings on the MRI were towards the left side and did not explain why plaintiff was having pain in his right leg. It appeared to Dr. Huffmon that many of plaintiff's symptoms were stemming from sacroiliac joint problems, so he referred plaintiff back to Dr. Wall for sacroiliac joint injections. However, the injections did not relieve the symptoms and on March 3, 2003 plaintiff returned to Dr. Huffmon. By that time, he was demonstrating some weakness of dorsiflexion in his left foot, and by the next appointment he was having pain and numbness in his left leg. Consequently, Dr. Huffmon then recommended surgery.
7. Dr. Huffmon performed surgery on March 18, 2003 to decompress the L4-5 and L5-S1 interspaces. Following the operation, plaintiff continued to experience symptoms of what Dr. Huffmon thought was sacroiliitis, so the doctor ordered injections, chiropractic treatment and therapy. Plaintiff's symptoms subsequently worsened and a repeat MRI revealed a large recurrent disc herniation at L5-S1. Consequently, Dr. Huffmon performed surgery a second time on June 16, 2003 at that level. Unfortunately, surgery was complicated by a dural tear with associated leakage of spinal fluid, and plaintiff had to remain in the hospital longer than expected.
8. Despite the second operation, plaintiff continued to experience significant back and leg pain. Subsequent diagnostic testing did not reveal any problem which could be corrected with surgery. Consequently, on December 23, 2003 Dr. Huffmon gave him permanent work restrictions. The doctor saw plaintiff once more on February 10, 2004. Plaintiff continued to experience debilitating back and right leg pain on that date.
9. Despite having not reported an injury to his employer in 2002, despite having told his supervisor when later specifically questioned that he had not hurt himself at work, and despite having denied having had a work related injury at the emergency room and at Coastal Orthopedics shortly following the alleged injury, plaintiff filed this claim in late April 2003 and maintained that he was entitled to receive workers' compensation benefits. He claimed that he did not report the injury to his employer because he thought he would get well and because he did not want a workers' compensation claim on his record.
10. Due to the fact that plaintiff told emergency room staff that he had been hurt at home and that he denied a work-related injury at Coastal Orthopedics as well as telling the physician's assistant there that he had been having symptoms for two weeks, which would have been a week before he has alleged he was hurt, and in that he told his supervisor, with whom he had a very good relationship, that he had not been hurt at work, plaintiff failed to prove by the greater weight of the evidence that he hurt himself on September 20, 2002 as he testified. Consequently, he did not prove that he sustained a specific traumatic incident of the work assigned or an injury by accident arising out of and in the course of his employment on September 20, 2002.
11. Furthermore, plaintiff did not report an alleged injury to his employer within thirty days, even verbally, a fact which he admitted at the hearing. His employer was unaware that he was claiming to have hurt himself at work until April or May 2003 when the Form 18 was filed. If plaintiff had been hurt at work, he did not have reasonable excuse for such a long delay in reporting the injury, particularly since he was out of work and receiving medical treatment throughout that time. He underwent surgery before the Form 18 was completed. Defendants were prejudiced in their ability to investigate the claim due to the lengthy delay in receiving notice. They were also prevented from being able to provide medical treatment. It would be impossible for defendants to now demonstrate that different medical care would have resulted in a better outcome, but plaintiff certainly has had a poor recovery. Plaintiff testified that he thought that Dr. Rodger did not want to perform surgery because plaintiff did not have health insurance, so even he thought that lack of insurance coverage might have affected how he was treated.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not prove that he sustained either a specific traumatic incident of the work assigned or an injury by accident arising out of and in the course of his employment on September 20, 2002 which resulted in the back injury in question. N.C. Gen. Stat. § 97-2(6);Anderson v. Northwestern Motor Company, 233 N.C. 372 (1951).
2. Furthermore, plaintiff's claim would be barred by his failure to give written or verbal notice of his alleged injury to his employer within thirty days since he did not have reasonable excuse for waiting seven months to give notice and since defendants were prejudiced by the delay. N.C. Gen. Stat. § 97-22.
3. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his back condition. N.C. Gen. Stat. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the 14th day of October 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER